**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ENRIQUE MORENO,

Petitioner,

v. No. 2:22-cv-00683-KWR-JHR

RICK MARTINEZ, in his official capacity, and THE STATE OF NEW MEXICO,

Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PETITIONER'S PETITION FOR A WRIT OF *HABEAS CORPUS* UNDER 28 U.S.C. § 2254**

THIS MATTER comes before the undersigned on Enrique Moreno's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. [Doc. 4]. District Judge Kea W. Riggs referred this matter to me for proposed findings and a recommended disposition on August 4, 2023. [Doc. 9]. The Court determined that Moreno's petition contained an unexhausted *Brady* claim that Moreno opted to dismiss in lieu of having his petition dismissed without prejudice. [*See* Doc. 16; 17; 18]. Respondents then filed an answer addressing the merits of Moreno's remaining exhausted claims.[1] [Doc. 19]. Moreno filed a response merely explaining that he had nothing additional to add. [Doc. 22]. Having reviewed the briefing, case record, and applicable law, I recommend the Court DENY Moreno's Petition and DISMISS this matter with prejudice.

[1] Respondents do not dispute that Moreno properly exhausted his remaining claims. [*See* Doc. 12, at 9]

## I. PROCEDURAL BACKGROUND

### A. Moreno's Criminal Trial.

On December 4, 2014, a New Mexico grand jury indicted Moreno on charges relating to the molestation and sexual assault of his minor step-granddaughter. [Doc. 12-1, at 1–2]. During trial the court excused two jurors. On the last day of trial, a third juror—Warren Buck—informed the court he discovered from his sister the night before that his whole family was familiar with the victim's family to some extent. *Id.* at 78. Specifically, his sister made the victim a dress, his grand-niece knew the victim personally, and the grand-niece's father had given the victim's family a refrigerator. *Id.* However, the juror assured the court he did not personally know the victim or her family, did not discuss the facts of the case, did alert the court promptly, and could be "very bipartisan." *Id.* at 79. Moreno's counsel moved to excuse the juror, which the court denied. *Id.* at 80. The jury found Moreno guilty of criminal sexual penetration of a minor under thirteen, attempt to commit criminal sexual penetration in the first degree of a child under thirteen, and criminal sexual contact of a minor under the age of thirteen, but not guilty of intimidation of a witness. *Id.* at 32–35.

### B. Moreno's Direct Appeal.

Moreno appealed his convictions to the New Mexico Court of Appeals raising actual juror bias and insufficient evidence. *Id.* at 63–64. Moreno argued the trial court's questions to the juror were ambiguous and the juror's answers failed to establish impartiality. *Id.* at 83. And, because the prosecution's case heavily depended on the victim's uncorroborated testimony, the possibility of bias toward her may have swung the verdicts. *Id.* at 90–91. The court of appeals did not agree. *Id.* at 128. The unanimous panel reasoned that because mere familiarity between the juror's and victim's families could not prove implied bias, it could not prove actual bias. *Id.* at 124. The New

Mexico Supreme Court denied Moreno's appeal. *Id.* at 156. Moreno did not file a petition for writ of certiorari to the United States Supreme Court on the issue.

**C. Moreno's State Habeas Petitions.**

On January 8, 2021, Moreno filed a pro se habeas petition in New Mexico state court asserting multiple grounds for relief including ineffective assistance of trial counsel for failure to request, review, and present evidence in discovery. *Id.* at 176, 178, 195, 199, 200–02. The New Mexico Public Defender's Office's habeas unit screened Moreno's petition and recommended finding its claims meritless. *Id.* at 288–93. The state district court agreed, dismissing nearly all of Moreno's claims. *Id.* at 297–301. The district court ordered Moreno to supplement his remaining claims with more factual support within forty-five days. *Id.* at 301.

Moreno submitted his revised petition on August 18, 2021. *Id.* at 326. Moreno reasserted, among others, his claim of ineffective assistance of counsel for inadequate request, review, and use of discovery. *Id.* at 347, 356, 362. The revised petition included for the first time an affidavit from Anthony Unale, an individual whom Moreno claimed was available at trial to testify that the third juror lied about the extent of his personal connections with the victim's family. *Id.* at 327, 396–97. The district court dismissed the amended petition with prejudice on September 10, 2021, for lack of factual support. *Id.* at 421. The court found Unale's affidavit unavailing because it only repeated information the trial court already knew when it allowed the third juror to remain on the jury. *Id.* at 419.

On October 12, 2021, Moreno filed a petition for writ of certiorari to the New Mexico Supreme Court. *Id.* at 422. The New Mexico Supreme Court denied the petition on September 7, 2022. *Id.* at 524. Moreno did not file a petition for writ of certiorari to the United States Supreme Court.

**D. Moreno's § 2254 Petition.**

Moreno filed his original § 2254 petition on September 15, 2022 [Doc. 1] and an amended petition on November 28, 2022. [Doc. 4]. After dismissal of the *Brady* claim, Moreno's remaining claims are now ripe for determination.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254, a federal court may only grant a state prisoner's petition for a writ of habeas corpus when the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In general, the prisoner must also have exhausted his state court remedies. 28 U.S.C. § 2254(b)(1). When the prisoner's claims have been adjudicated on the merits in state court, a Section 2254 petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [United States Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [United States Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where … the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Woods v. Donald*, 575 U.S. 312, 316 (2015) ("[A]n unreasonable application of [United States Supreme Court] holdings must be objectively

unreasonable, not merely wrong; even clear error will not suffice.") (quotation marks omitted). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (brackets omitted).

Federal review of a state court's determination that a claim lacks merit is "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002)). "[F]ederal habeas relief [is precluded] so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough*, 541 U.S. at 664.). The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98. Unless the state court indicated that it did not consider an issue on the merits, even a summary denial will be deemed "on the merits" for purposes of Section 2254 review. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004); *see Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.").

Review under Section 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 180–81, 185 n.7; *Black v. Workman*, 682

F.3d 880, 895 (10th Cir. 2012). Such review must be "highly deferential," and the petitioner bears the burden of proof. *Cullen*, 563 U.S. at 181; *Woodford,* 537 U.S. at 24–25.

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be…. [Section] 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.

*Harrington*, 562 U.S. at 102–03 (citation and quotation marks omitted).

In Section 2254 proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence.").

I will consider Moreno's claims in light of the foregoing standards.

## III. ANALYSIS

Moreno asserts four grounds for relief: (1) juror misconduct, (2) ineffective assistance of counsel, (3) actual innocence, and (4) double jeopardy. [Doc. 4, at 5–10].

### *1. Juror Misconduct*

Moreno argues, as relevant here, that the district court abused its discretion by failing to award a mistrial based on a finding of actual juror bias.[2]

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the

[2] "[A]lthough the Court's dire attempt to avoid a mistrial, violated, the defendant's fundamental and constitutional Sixth Amendment right to a fair trial and right to fair and impartial jury." [Doc. 4, at 26].

minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Due process means, in pertinent part, "a jury capable and willing to decide the case solely on the evidence before it[.]" *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

"Actual bias is a '[g]enuine prejudice that a . . . juror . . . has against some person or relevant subject[,]" *Dermen v. United States*, 143 F.4th 1166, 1172 (10th Cir. 2025) (quoting Bias, Black's Law Dictionary (12th ed. 2024), and "may be shown either by a juror's express admission, or by proof of specific facts which show the juror has such a close connection to the facts at trial that bias is presumed." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467 (10th Cir. 1994). "On habeas review, the state court's determination of actual juror bias is a factual one entitled to a presumption of correctness." *Fletcher v. Hartley*, No. Civ. 09-02119 WYD/CBS, 2011 WL 1843316, at *7 (D. Colo. May 16, 2011) (citing *Patton v. Yount*, 467 U.S. 1025, 1036–37 (1984)). Further, "[a] federal habeas court may reverse a state trial court's findings of juror impartiality only upon a showing of manifest error." *Lucero v. Kerby*, 133 F.3d 1299, 1308 (10th Cir. 1998) (internal authority omitted).

The question before this Court, therefore, is not whether it would have made the same determination as the state trial court in the first instance. Rather, because the New Mexico courts adjudicated Moreno's juror-bias claim on the merits, Moreno must establish under 28 U.S.C. § 2254(d) that the state court's rejection of the claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or that it rested on an unreasonable determination of the facts.

The record does not support such a showing. On the first day of trial, September 11, the trial court asked during voir dire whether any prospective juror knew Moreno, and no juror raised a hand. [Doc. 20-1, at 1, 14]. On the final day of trial, September 14, however, the trial judge

informed counsel that Buck had approached the bailiff that morning and reported that members of his family were familiar with the Ross family. [Doc. 20-4, at 4]. The court then conducted an in-camera examination of Buck concerning the nature and extent of those connections. *Id*. at 9.

During that examination, Buck stated three times that he did not personally know or recognize any member of the Ross family. *Id*. at 10–12. He specifically stated that he did not know the victim, M.R., or her parents, Diane and Ed Ross, all of whom testified at trial. *Id*. Buck explained that, after returning home from court the previous evening, his sister asked whether the case involved "Maddy." *Id*. at 11. Buck then learned for the first time that several members of his family had connections to the Ross family. *Id*. at 10–17. Specifically:

- Buck's sister had made a prom dress for the victim;
- Buck's niece, Cassie Sena, worked in administration at the school the victim attended;
- Buck's great-niece, Bethany Sena, knew the victim from school; and
- Buck's great-niece's father had given the Ross family a refrigerator.

*Id*.

The questioning further established that Buck lived with his sister, while his niece and her family lived in a separate dwelling across a chain-link fence on the same property. *Id*. at 15–16. Buck stated that the conversation with his sister was limited to these matters and that they did not discuss the facts of the case. *Id*. at 13. When asked whether the conversation affected his ability to serve as a juror, Buck answered, "No. I can be very bipartisan." *Id*. at 14.

After hearing from counsel, the trial court declined to excuse Buck. The court explained:

> He basically indicated he received information from other people. He didn't indicate that that information affected him, and he indicated he could be fair and impartial. So, at this point, I don't have a basis upon which to excuse Mr. Buck, so I am not going to excuse him.

*Id*. at 22.

The New Mexico Court of Appeals subsequently considered Moreno's claim of actual juror bias and affirmed the trial court's determination.[3] The court reasoned that the relationship between the juror's family and the victim in this case did not establish implied bias and, absent additional evidence, likewise did not establish actual bias. [Doc. 19-1 at 124]. The Court cited to New Mexico Supreme Court precedent in which the Court held that the role of a juror's sister as a victim advocate in the case—who sat with the victim's family throughout the trial—was not sufficient to create an implication of bias. *Id.*; *See State v. Sanchez*, 1995-NMSC-053, ¶ 15, 120 N.M. 247, 901 P.2d 178. The court concluded that given the context of the in-camera examination of Buck and Buck's assertion that he could be "very bipartisan"—which the court of appeals took to mean "could give both sides fair consideration"—the district court did not abuse its discretion in ruling that Buck could be fair and impartial. [Doc. 19-1 at 125–26].

The court of appeals' in-depth analysis and conclusion on the merits is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor is it based on an unreasonable determination of the facts in light of the evidence presented. Nothing in the trial court record demonstrates that Buck himself had a preexisting relationship with the victim or her parents. To the contrary, Buck repeatedly stated that he did not personally know them. Nor did Buck indicate that his family's connections to the Ross family caused him to favor the State or otherwise affect his ability to remain impartial. The relevant information came to Buck only after the third day of trial, and Buck promptly disclosed it to the bailiff the following morning. He then

[3] Juror bias can take two forms—actual and implied. *United States v. Dermen*, 143 F.4th 1148, 1172 (10th Cir. 2025). Moreno clarifies in his reply brief that he is alleging actual bias, not implied bias. [Doc. 19-1, at 115]. Situations that would support a finding of implied bias "might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith,* 455 U.S. at 222 (O'Connor, J., concurring). Moreno is correct that no such relationship exists here.

submitted to questioning by the court and counsel and expressly denied that the information affected his ability to serve impartially.

Moreno nevertheless relies on an affidavit from Anthony Unale submitted during his state habeas proceedings. [Doc. 12-1, at 396–97]. Unale purportedly stated that Buck and Ed Ross were good friends and that, on one occasion, Buck and Ed Ross, together with Moreno, helped load or unload a refrigerator from a pickup truck. *Id*. Unale further stated that he asked Moreno's trial attorney to call him as a witness regarding these facts but counsel never contacted or interviewed him. *Id*.

The affidavit does not satisfy Moreno's burden to rebut, by clear and convincing evidence, the presumption of correctness afforded to the state court's determination that Buck could remain fair and impartial. Even accepting the affidavit at face value[4], it does not establish that Buck harbored prejudice against Moreno or that Buck was incapable of deciding the case impartially. At most, it provides additional evidence of some prior familiarity between Buck and members of the Ross family.

The state habeas court considered Unale's affidavit and rejected Moreno's attempt to use it as additional support for his juror-bias claim. [Doc. 19-1, at 419]. The court observed that the affidavit did not provide materially new information concerning the circumstances known to the

---

[4] I find Respondents' additional argument that the Unale affidavit is not credible persuasive, but ultimately unnecessary to my analysis. [Doc. 19, at 19]. I add that the affidavit contains an unexplained inconsistency that further limits its significance. Unale appears to allege that Moreno and Buck were both present when a refrigerator was loaded or unloaded, yet Moreno's petition does not assert that he had previously met or interacted with Buck. To the contrary, when discussing the affidavit, Moreno characterizes it as establishing familiarity between the Buck and Ross families, rather than as evidence that Moreno himself knew Buck. [Doc. 4, at 30]. Likewise, elsewhere in his petition, Moreno states only that the Buck family gave the Ross family a refrigerator and does not assert that he was present with Buck when the refrigerator was loaded or unloaded. *Id*. at 27. This inconsistency further undermines Moreno's reliance on the affidavit as evidence that Buck had a personal relationship with either Moreno or the Ross family sufficient to establish actual bias.

trial court when it decided whether to retain Buck on the jury or to the court of appeals when it affirmed Moreno's convictions. *Id*. at 419–20. Ultimately, the court held that the record, now including the affidavit, failed to show that Moreno was denied a fair and impartial jury and, therefore, he could not succeed on his ineffective assistance of counsel claim related to juror misconduct.[5] *Id*. at 420.

Moreno has not identified, and the Court is aware of no clearly established Supreme Court precedent requiring a finding of actual juror bias based solely on the type of familial or community connections present here.[6] Nor has he shown that the New Mexico courts unreasonably applied the governing constitutional principles in determining that Buck could remain impartial. The record contains no express admission of prejudice by Buck and no specific facts establishing that Buck had such a close connection to the victim, her family, or the underlying facts of the case that bias was constitutionally compelled.

At most, Moreno has identified circumstances from which the possibility of bias might be inferred. But the possibility of bias, without more, is insufficient to satisfy § 2254(d).[7] The state

---

[5] Furthermore, the state habeas court found that the affidavit was only relevant to Moreno's claim of ineffective assistance of counsel related to juror misconduct. [Doc. 19-1, at 419–421]. The state habeas court explained that, "the underlying issue of jury misconduct was thoroughly addressed by the Court of Appeals during the direct appeal of this matter. Accordingly, Petitioner may not seek post-conviction relief for an issue raised on appeal that was decided on the merits against defendant. *See State v. Gomez*, 1991-NMCA-061." [Doc. 19-1 at 300].

[6] Moreno also argues that when a court discovers potential bias between a juror and a "key" witness, it must apply a heightened standard in determining whether the juror may remain on the jury. [*See* Doc. 4, at 16, 30]. Moreno, however, identifies no authority supporting such a heightened standard, and the Court is aware of none. The court of appeals likewise rejected Moreno's argument that this case was analogous to *State v. Alvarez*, explaining why the circumstances here did not warrant the result Moreno sought. [Doc. 19-1, at 127–28].

[7]The Court of Appeals noted that Moreno "adamantly argues that the juror *could have been* or *may have been* or *was possibly* biased" and that such "arguments of potential or speculative bias" fall short of establishing actual bias. [Doc. 19-1, at 124–25] (emphasis in original). Here too, Moreno's arguments of potential bias do not establish a record of actual bias. [*See* Doc. 4, at 19 ("presumed of prejudice" and

courts considered the information concerning Buck, questioned him directly about its effect on his impartiality, and determined that he remained capable of deciding the case based solely on the evidence. Nothing in the record demonstrates that the state court's determination was unreasonable, and the trial court did not commit manifest error. *Lucero*, 133 F.3d at 1308.

Accordingly, Moreno is not entitled to federal habeas relief on his juror-misconduct claim.

2. *Ineffective Assistance of Counsel*

Moreno argues that he was denied effective assistance of counsel for a laundry list of reasons. [Doc. 4 at 7, 40–55]. Moreno raised the following claims in the state habeas proceedings and raises them again here. Specifically, Moreno argues that counsel was ineffective for failing to (a) file "appropriate" pretrial motions, including a motion to quash the indictment, (b) explore more fully the connection between Mr. Buck and M.R.'s family, (c) investigate Anthony Unale's "exculpatory testimony," (d) move to withdraw "because of her case load" and because during pretrial stages, counsel was grieving the death of her mother, and (e) prevail on Mr. Moreno's actual innocence claim.

When evaluating a claim of ineffective assistance of counsel, a court must determine whether a petitioner has shown (1) that counsel's representation fell below an objective standard of reasonableness, and (2) it is reasonably probable that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689; it is not enough to show that the representation "deviated from best practices or most common custom," *Harrington*,

"potential presumption of bias"); *id*. at 21 ("presumed bias juror"); *id*. at 24 ("perception of prejudice"); *id*. at 30 ("impartiality was never clearly established")].

562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). On review under § 2254(d), this standard is "doubly" deferential and the relevant question is not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

There is no evidence that Moreno's right to effective assistance of counsel was violated here. In response to the above claims, (a)–(e), the state habeas court observed: (a) appropriate motions were filed by trial counsel, [Doc. No. 19–1, at 299], (b) Moreno failed to show actual bias on the part of Warren Buck or that counsel's performance in attempting to uncover such bias was deficient, *id*. at 420, (c) Moreno failed to identify what "exculpatory evidence" counsel could have uncovered that would have proven his actual innocence, and the Unale affidavit falls far short of doing so, *id*. at 421, (d) counsel's personal circumstances did not negatively impact the representation, particularly because discovery was completed before counsel's family emergency, *id*. at 299, and (e) nothing in the Unale affidavit was relevant or exculpatory as to the actual charges in this case, and counsel's performance was not deficient for failing to have Unale testify at trial, *id*. at 421.

The state habeas court properly applied the requirements of *Strickland*, and its factual findings were reasonable based on the record. [Doc. 19-1, at 298, 419]. Ultimately, the state habeas court concluded that Moreno's ineffective-assistance allegations were either general and unsupported by the evidence or failed to establish deficient performance or prejudice. [*Id.* at 300, 420–21]. As the state court observed, there is nothing in the record indicating that counsel's performance fell below an objective standard of reasonableness and nothing to show that it was reasonably probable that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. At a minimum, there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard as to each of Moreno's ineffective-assistance claims.

Therefore, Moreno has not demonstrated an entitlement to relief.

Moreno also appears to raise the following additional allegations for the first time: counsel was ineffective for failing to (a) interview M.R.'s younger sister, her great-grandmother, her cousin, and an aunt, (b) adequately impeach M.R., (c) retain an expert to clarify and explain the evidence, and (d) search M.R.'s letter to her grandmother for clues as to her motive to fabricate the allegations. [Doc. 4, at 40–56]. Respondents' present a persuasive explanation of how these allegations fail to show that counsel's performance fell below an objective standard of reasonableness or that counsel's performance resulted in prejudice. [*See* Doc. No. 19, at 23–25]. Moreover, when given the opportunity to respond to Respondents' arguments, Moreno stated that he had nothing to add. [Doc. No. 22].

These additional allegations are meritless and fail to establish ineffective assistance of counsel under *Strickland*. Counsel's performance is strongly presumed to have been objectively reasonable, and nothing in the record demonstrates a reasonable probability that any alleged deficiency prejudiced Moreno. *See also Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) (the decision as to which witnesses to call is quintessentially a matter of strategy for trial counsel); *see also Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005) ("[C]ounsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy."); *see also United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005) (weighing conflicting evidence and evaluating witness credibility "are the exclusive province of the jury").

Accordingly, Moreno is not entitled to federal habeas relief on his ineffective assistance of counsel claims.

3. *Actual Innocence*

Moreno seems to argue actual innocence here as a gateway to overcome an unidentified procedural bar to his claim of ineffective assistance of counsel through failure to prove actual innocence.[8] The only "new reliable evidence" that Moreno identifies anywhere in his petition is the Unale affidavit.[9]

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). However, where the asserted claims are procedurally barred, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits pursuant to what has been termed the miscarriage-of-justice exception. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

"This exception … is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (internal quotations omitted). To take advantage of the exception, a habeas petitioner must "'persuade[] the district court that, in light of

---

[8] "Ineffective Assistance of Counsel, attributed and produced by trial counsel's failure to research, prepare, and mitigate, resulting in complete denile [sic] of petitioner's substantive Actual Innocence Claim based on an independent Sixth Amendment Constitutional ground, attributed to the commulative [sic] counsel's errors in violation of 5th, 6th, and 14th Amendments to the United States Constitution." [Doc 4, at 49].

"Petitioner asserts that subject to defendant's developed record of actual innocence, tied to the Defendants Constitutional Sixth Amendment violation, in which cumulative impact or irregularities is so prejudicial to the Defendant; that he is deprived of his fundamental Constitutional right to a fair trial proceedings, had not for attorneys unprofessional errors as in this case; where the burden of proving the defendant's, claim of actual innocence in the context of overcoming a procedural default, was a failure, and prejudice is established." [Doc. 4, at 54].

[9] "The Petitioner contends that the new found evidence: "Affidavit" signed by Anthony Unale relates of the case in how Mr. Warren lied to the Court… The Petitioner asserts that this information was not avail [sic] to trial court at the time of the ruling, allowing the juror to continue serving on the jury comtemptuous [sic] to the law." [Doc. 4, at 30–31].

… new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Burke v. Bigelow*, 792 F. App'x 562, 565 (10th Cir. 2019) (quoting *McQuiggin*, 569 U.S. at 386). The "new reliable evidence" must be similar to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (quotations omitted).

Moreno's actual-innocence claim fails because a freestanding claim of actual innocence is not cognizable in federal habeas proceedings absent an underlying constitutional violation. Although a credible showing of actual innocence may serve as a gateway to overcome a procedural default, Moreno has not identified any procedural default to overcome because his ineffective-assistance claim was considered and rejected on the merits by the state habeas court. [Doc. 19-1, at 421 ("[T]he Affidavit strictly addresses issues related to [Warren Buck's alleged bias] and states nothing that would be relevant or exculpable to the actual charges in this matter.")].

Moreover, Moreno has not satisfied the "extraordinarily high" standard for a gateway actual-innocence claim, which requires new reliable evidence showing that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Heard v. Addison*, 728 F.3d 1170, 1174 n.1 (10th Cir. 2013). Unale's affidavit does not meet that standard because, as the state habeas court observed, it concerns alleged bias by Warren Buck and contains nothing relevant or exculpatory to the actual charges against Moreno. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[A]ctual innocence means factual innocence, not mere legal insufficiency").

Accordingly, Moreno is not entitled to federal habeas relief on his actual innocence claim.

*4. Double Jeopardy*

A jury found Moreno guilty of one count each of criminal sexual penetration of a minor (child under 13) (CSPM) (Count 1); attempted CSPM (Count 2); and criminal sexual contact of a minor (child under 13) (CSCM) (Count 3). Moreno argues that his convictions for both CSCM and attempted CSPM violate his protections against double jeopardy because he received multiple punishments for the same offense arising from one continuous course of conduct. [Doc. 4, at 68].

The "Double Jeopardy Clause . . . prevent[s] the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Where, as here, a defendant argues that he has been punished twice for the same conduct, "the test to be applied to determine whether" the legislature intended to punish "two offenses or only one, is whether each [statute] requires proof of a fact which the other does not." *United States v. Raymer,* 941 F.2d 1031, 1043–44 (10th Cir. 1991) (quoting *Blockburger v. United States,* 284 U.S. 299, 304 (1932)). If each statute "requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States,* 420 U.S. 770, 785 n.17 (1975).

Before applying the *Blockburger* test, however, courts must first determine whether the conduct underlying the convictions was, in fact, the same, i.e., "unitary." *Swafford v. State*,[10] 1991-NMSC-043, ¶ 25, 810 P.2d 1223, 1223 ("The first part of our inquiry asks the question that Supreme Court precedents [like *Blockburger*] assume to be true: whether the conduct underlying the offenses is unitary[.]"). "[I]f the conduct is separate and distinct, [the double jeopardy] inquiry is at an end." *Swafford*, 1991-NMSC-043, ¶ 28, 810 P.2d at 1234; *Lucero*, 133 F.3d at 1316 ("If

[10] While this Court is not "bound by state court rulings on ultimate constitutional questions," it "defer[s] to [the New Mexico courts'] interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes[.]" *Thomas v. Kerby*, 44 F.3d 884, 887 (10th Cir. 1995) (quoting *Mansfield v. Champion,* 992 F.2d 1098, 1100 (10th Cir.1993)).

the conduct is non-unitary, then multiple punishments would not violate the Double Jeopardy Clause.").

Conduct is not unitary when "'sufficient indicia of distinctness' separate the illegal acts[.] *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227, 241 (quoting *Swafford*, 1991-NMSC-043, ¶¶ 26-28, 810 P.2d at 1223). Indicia of distinctness are sufficient when, for example, there is "'an identifiable point at which one of the charged crimes had been completed and the other not yet committed,'" " *Ellis v. Smith,* No. 21-2122, 2022 WL 3371008, at *5 (quoting *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 131 P.3d 61, 71), or "when the force used to commit a crime is separate from the force used to commit another crime." *Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d at 242. "If two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred), then it is a fairly simple task to distinguish the acts." *Swafford*, 1991-NMSC-043, ¶ 28, 810 P.2d at 1233–34.

Here, the CSCM charge was based on the first criminal incident between Moreno and M.R. in which Moreno touched M.R.'s breasts outside his tiki bar. [Doc. 20-2, at 39–43]. The attempt charge, on the other hand, was based on a second incident that occurred later that summer in the Moreno home computer room, when Moreno attempted to penetrate M.R. vaginally with his penis but ultimately "decided in the back." *Id*. at 43–49. Because the record supports sufficient indicia of distinctness between the two incidents and their resulting convictions, the conduct is non-unitary and the double jeopardy analysis ends there. This is the same result the state habeas court reached when it observed that the two charges at issue here are factually distinct and therefore do not violate double jeopardy. [Doc. 19-1, at 298]. That determination is consistent with the governing legal framework: where the conduct underlying two convictions is separate and distinct there is no double-jeopardy violation based on multiple punishments. *See United States v. Benoit*, 713 F.3d 1,

16 (10th Cir. 2013) (internal quotation marks and citation omitted) (It is patently true under federal law that Double Jeopardy "has no application in cases in which two counts are based on two distinct sets of conduct.").

Accordingly, Moreno is not entitled to federal habeas relief on his double jeopardy claim.

5. *Miscellaneous claims*

I briefly address Moreno's miscellaneous claims, which are raised in the context of his ineffective-assistance-of-counsel claims. I find Respondents' analysis of these claims thorough, comprehensive, and persuasive. [Doc. 19, at 30–33]. Once again, Moreno did not meaningfully respond to Respondents' analysis. [Doc. 22].

First, Moreno appears to argue that his convictions were based on insufficient evidence because the victim's testimony was refuted by her grandmother's testimony. [Doc. 4, at 45–56]. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing a sufficiency-of-the-evidence claim, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

As Respondents correctly argued, in New Mexico, "[i]t is well established that in 'prosecutions for [CSP], the testimony of the victim need not be corroborated and lack of corroboration has no bearing on weight to be given to the testimony.'"[11] *State v. Tapia*, 2015-NMCA-048, ¶ 12, 347 P.3d 738, 743 (quoting *State v. Nichols*, 2006-NMCA-017, ¶ 10, 139 N.M.

[11] *See also Meek v. Martin*, 74 F.4th 1223, 1252 (10th Cir. 2023) (upholding a murder conviction in a case "decided on purely circumstantial evidence").

72, 75). By their verdicts, the jurors necessarily indicated that they credited M.R.'s testimony, were able to reconcile the inconsistencies revealed during cross-examination, and were persuaded that the State had proved all essential elements of the charged offenses beyond a reasonable doubt. Viewing the evidence in the light most favorable to the prosecution, the record supports the conclusion that a rational trier of fact could have found the essential elements of Moreno's crimes beyond a reasonable doubt.

Accordingly, Moreno's sufficiency-of-the-evidence claim lacks merit.

Second, Moreno appears to argue that the State's prosecutorial misconduct so infected the trial with unfairness as to make the resulting convictions a denial of due process. [Doc. 4, at 57]. In support, Moreno cites to unidentified "improper conduct by [the] prosecutor" as well as "[m]anifest injustice, direct, obvious and observable error on [the] trial court[.]" *Id*.

Improper conduct by the prosecuting attorney may be a basis for federal habeas relief if it "so infect[ed] the trial with unfairness as to make the resulting conviction[s] a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The habeas petitioner bears the burden of demonstrating misconduct. *Newsome v. T.B. Hatch*, No. Civ. 08-1180 MCA/RHS, 2011 WL 13284728, at *14 (D.N.M. Sept. 1, 2011).

As Respondents correctly argued, this claim must be rejected as impermissibly vague and conclusory. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

Accordingly, Moreno's prosecutorial-misconduct claim lacks merit.

## IV. CONCLUSION

Federal habeas relief is precluded as to each of Moreno's claims because, at a minimum, fairminded jurists could disagree about the correctness of the state court's decisions on the merits. *Harrington*, 562 U.S. at 101. For the reasons discussed above, I recommend the Court DENY Moreno's Petition and DISMISS this matter with prejudice.

HON. JERRY H. RITTER
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**